WALSH PIZZI O'REILLY FALANGA

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
WALSH.LAW

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

September 29, 2026

**VIA ECF**

Hon. Julien X. Neals, U.S.D.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

**Re: *Davenport v. Amazon.com, Inc., et al.*, Civ. A. No. 2:26-cv-09814 (JXN) (JSA)**

Dear Judge Neals:

This firm, together with Gibson, Dunn & Crutcher LLP and Seyfarth Shaw LLP, represents defendants Amazon.com, Inc., Amazon.com Services, LLC, and Amazon Logistics, Inc., (Amazon) in this matter. Amazon buys last-mile delivery from independent companies, called Delivery Service Partners (DSPs), which employ their own drivers and set their own wages. Plaintiff alleges that Amazon violated antitrust laws by opposing unionization of those drivers and publishing an Operations Manual that (years ago) discouraged DSPs from recruiting one another's drivers. Pursuant to Section IV.A of Your Honor's Rules and Procedure, Amazon respectfully requests a pre-motion conference to file one brief addressing three threshold motions, each of which would be dispositive in whole or substantial part: *first*, a motion to dismiss under Rule 12(b)(1); *second*, alternatively, a motion to stay pending arbitration under the Federal Arbitration Act and applicable state law; and *third*, alternatively, a motion to dismiss under Rule 12(b)(6). The grounds for these motions are summarized below.

## I. The National Labor Relations Act Commits this Dispute to the NLRB, and this Court Therefore Lacks Jurisdiction (Rule 12(b)(1)).

The Complaint alleges a labor dispute. The Complaint repeatedly accuses Amazon of taking actions to "prevent unionization," and using tactics to "crush any prospect" of a DSP union that would "collectively bargain for better compensation and working conditions." Compl. ¶¶ 11, 20–21, 83. Several of the same allegations are already pending before the National Labor Relations Board ("NLRB"). *See, e.g.*, NLRB Case Nos. 29-CA-353162, 29-CA-358606, 29-CA-372194.

Under the National Labor Relations Act, the NLRB has "exclusive" jurisdiction over "an activity [that] is arguably subject to § 7 or § 8 of the Act." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 241, 244–45 (1959). "[N]either state nor federal courts possess jurisdiction over claims based on activity that is 'arguably' subject to §§ 7 or 8." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 74 (1989). Because the Complaint seeks to hold Amazon liable for allegedly "prevent[ing] unionization," Compl. ¶¶ 20–21, the Court "must dismiss the claims for lack of subject matter jurisdiction based on the complete preemption of the NLRA." *Cox v. Airgas USA, LLC*, No. 25-15925, 2026 WL 957426, at *5 (D.N.J. Feb. 26, 2026); *see also Amazon.com Servs. LLC v. N.Y. State Pub. Emp't Rels. Bd.*, No. 25-CV-5311, 2026 WL 2085865,

at *4 (E.D.N.Y. July 20, 2026). To the extent the claims reach conduct Congress left to "the free play of economic forces," they are also preempted for that independent reason. *Lodge 76, Int'l Ass'n of Machinists v. Wis. Emp't Rels. Comm'n*, 427 U.S. 132, 140–41 (1976).

**II. The Damages Claims Belong to Drivers Who Agreed to Individual Arbitration, So This Case Should Be Stayed Pending Those Arbitrations (FAA and State Laws).**

Pursuant to Clayton Act Section 4c, Plaintiff is standing in the shoes of DSP drivers to pursue damages claims on their behalf. Amazon seeks a stay while the drivers' damages claims proceed in the arbitration forum they chose. The Complaint alleges that since May 2019, Amazon has required DSPs and their drivers to agree to arbitration with class-action waivers. Compl. ¶ 52. Each driver agreed to resolve disputes "arising out of or relating to" the employment relationship exclusively through individual arbitration and waived class, collective, consolidated, and representative procedures. These antitrust claims are therefore arbitrable, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628–32; 638–40 (1985), and the accompanying waivers are enforceable, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–39 (2013); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *accord Arafa v. Health Express Corp.*, 243 N.J. 147, 171–72 (2020). A court has already held that Amazon may enforce materially identical arbitration agreements as an intended third-party beneficiary. *Cross v. Amazon.com, Inc.*, No. 23-cv-02099, 2024 WL 4346414, at *4–5 (D. Colo. Sept. 30, 2024).

Clayton Act Section 4c "did not establish any new substantive liability"; it "simply created a new procedural device" for Attorneys General to step into claimants' shoes and pursue representative antitrust claims on their behalf. *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 219 (1990). Plaintiff therefore takes the drivers' damages claims subject to the conditions attached to them. *See, e.g.*, *In re Frescati Shipping Co.*, 886 F.3d 291, 308-10 (3d Cir. 2018). Cases like *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), do not compel a contrary result. That case, and others like it, turned on features of regulators' authority that Clayton Act Section 4c conspicuously lacks.

**III. The Complaint Fails to State a Claim (Rule 12(b)(6)).**

Even if this case were properly before the Court, it fails to state a claim and should be dismissed.

*No exclusionary conduct (Counts 1–2).* The Complaint fails to allege that Amazon excluded any competing purchasers of delivery services. Instead, the Complaint contends that Amazon (i) discouraged unionization of its own contractors' workers, and (ii) facilitated "no-poach" policies and practices among Amazon DSPs. None of that relates to exclusion of competing purchasers of delivery services, which is necessary to state a claim. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). The Complaint pleads only that Amazon sets the terms on which it deals—rates, routes, equipment, standards, and terminations. Compl. ¶¶ 44, 47–48, 51, 69. "[B]usinesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009).

*No concerted action (Counts 3–4).* Sherman Act § 1 requires a "conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). The Operations Manual language challenged by Plaintiff was unilateral guidance, removed by March 2021, and replaced with guidance that Amazon "can't restrict movement/recruiting." Compl. ¶¶ 18, 102–07. Plaintiff thus pleads no vertical agreements with DSPs, nor any horizontal agreement among DSPs. The Complaint even affirmatively alleges that Amazon shut down DSP-to-DSP conversations. *Id.* ¶ 113; *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010).

*No cognizable markets (Counts 1–4).* The three alleged markets are not adequately pleaded. The principal "DSP Services Market" is bounded by Amazon's own contracts, which fails as a matter of law. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436–38 (3d Cir. 1997). The alternative "Last Mile Delivery Services Market" fails because, in a monopsony case, the market must be drawn from the sellers' perspective and include the buyers that sellers view as substitutes. *LifeWatch Services Inc. v. Highmark, Inc.*, 902 F.3d 323, 336–37 (3d Cir. 2018). Plaintiff concedes that alternative buyers of delivery services exist, but improperly alleges they should be ignored. And the alleged "DSP Drivers Market" similarly fails because it excludes purchasers of labor outside of the DSP program. The Complaint concedes that driving requires an ordinary driver's license and a background check, names numerous other employers, concedes that turnover exists within the DSP program, but implausibly alleges that drivers would not turn to alternative employers outside the DSP program. Compl. ¶¶ 19, 37, 109–12, 131.

*No monopsony or market power (Counts 1–4).* Because the alleged "DSP Services Market" is not cognizable, the 100% share alleged within it fails to plead the necessary element of monopsony power. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007). And Plaintiff's fallback share associated with the alleged "Last Mile Delivery Services Market"—roughly 30 percent based on packages delivered nationwide, Compl. ¶ 134—is too low as a matter of law to plead power. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 26 & n.43 (1984); *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112–13 (3d Cir. 1992). Further, direct evidence requires an abnormally high price-cost margin and restricted output, *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 434 (3d Cir. 2016), whereas the Complaint pleads the opposite—explosive growth in purchases of DSP services and new entry, Compl. ¶¶ 35, 37–38, 42, 76.

*No antitrust injury or standing (Counts 1–4).* Plaintiff alleges that Amazon's conduct prevented drivers from unionizing and thereby earning a higher wage. But that higher wage would not have been the result of more competition for their labor. Plaintiff alleges that, but-for Amazon's conduct, drivers would have had the same options and would have worked for the same employers but just would have been paid more. That is not "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 539–42 (1983). The alleged wage suppression is also a passed-on effect two levels removed from Amazon, which *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–47 (1977), and *UtiliCorp*, 497 U.S. at 216–17, bar. The causal chain is also speculative, resting on many contingent choices by thousands of non-parties and hypothetical union organizing and bargaining outcomes. *McLoughlin v. Cantor Fitzgerald L.P.*, 162 F.4th 378, 388–89 (3d Cir. 2025).

*Count 5.* The New Jersey Antitrust Act must "be construed in harmony with" "comparable Federal antitrust statutes," N.J.S.A. § 56:9-18; *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 175, 178–80 (App. Div. 1995). Count 5 pleads no distinct conduct, market, or theory of harm, and so rises and falls with the federal counts.

Respectfully submitted,

s/*Liza M. Walsh*

Liza M. Walsh

cc: All counsel of record (via CM/ECF)