NLG NACHAWATI LAW GROUP

Hon. Julien X. Neals, U.S.D.J. October 6, 2026
United States District Court, District of New Jersey
MLK Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

**RE:** *Attorney General of New Jersey v. Amazon.com, Inc.*, No. 26-cv-09814 (JXN)(JSA)

Dear Judge Neals:

This office represents New Jersey Attorney General Jennifer C. Davenport ("Plaintiff") in the above-captioned enforcement action against Amazon.com, Inc., Amazon.com Services, LLC, and Amazon Logistics, Inc. (collectively, "Amazon" or "Defendants"). We write under the Court's Individual Rules to summarize why Amazon's pre-motion letter fails to identify a basis for dismissal of any claims. We hope Amazon will reconsider its contemplated motion to avoid delaying resolution of this matter and wasting public resources. We address Defendants' arguments in the order presented in their letter.

## I. The NLRA Does Not Bar the Attorney General's Antitrust Claims

Amazon misreads the Complaint and controlling case law. First, Amazon is incorrect to characterize the Complaint as alleging a "labor dispute." The Complaint instead alleges anti-union conduct as one of several reenforcing ways Amazon maintains its monopsony in violation of the antitrust laws. Compl. ¶¶ 83-85. No-poach agreements, prohibiting DSPs from competing for drivers, and Amazon's control of DSP operations are each components of Amazon's anticompetitive scheme. *Id.* ¶¶ 101-14. The Complaint alleges that Amazon is the sole buyer of DSP services in New Jersey and can determine whether a DSP remains in business. *Id.* ¶¶ 66, 115, 122, 129. Amazon used that leverage to threaten and ultimately terminate DSPs where drivers sought to organize, preserving its monopsony. *Id.* ¶¶ 83, 88-89, 100, 119. Whether those practices violate the Sherman Act does not require determining whether they also violate the National Labor Relations Act. Only a district court, not the National Labor Relations Board (NLRB), may adjudicate this dispute in its entirety. *See* 15 U.S.C. §§ 4, 15c(a)(1).

Second, the NLRB's jurisdiction does not foreclose Plaintiff's antitrust claims. See *Connell Constr. Co. v. Plumbers & Steamfitters Loc. Union No. 100*, 421 U.S. 616, 626 (1975) ("[F]ederal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies, *including the antitrust laws*." (emphasis added)). Amazon's preemption theory is contrary to *Connell* and would prevent federal courts from enforcing antitrust law merely because the pleadings include facts that arguably support a hypothetical NLRB claim. For example, proving that the alleged no-poach agreements unlawfully restrain competition does not require proving an unfair labor practice. Compl. ¶¶ 101-14. Where a claim arises under a federal statute other than the labor laws, "no dispute falls within the Labor Board's primary jurisdiction, even if labor relations turn out to be implicated in some other fashion." *Baker v. IBP, Inc.*, 357 F.3d 685, 689 (7th Cir. 2004).

## II. Plaintiff Is Not a Party to Arbitration Agreements, Making a Stay Inappropriate

Amazon intends to ask the Court to stay Plaintiff's case based on arbitration agreements between DSPs and their drivers to which neither Amazon nor Plaintiff is a party. Amazon's argument is unclear on whether it would seek a stay of the entire case or only the *parens patriae* damages sought under 15 U.S.C. § 15c and N.J.S.A. 56:9-12. Regardless, binding precedent requires that either request be denied. As a threshold matter, "[i]t goes without saying that a contract cannot bind a nonparty," and "the proarbitration policy goals of the [Federal Arbitration Act] do not require the agency to relinquish its statutory authority if it has not agreed to do so." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

*Waffle House* holds that the government is not bound by arbitration agreements to which it is not a party, "even when it pursues entirely victim-specific relief," *id.* at 296, which Courts have consistently applied to reject attempts to bind government enforcers to private arbitration agreements, including those seeking relief for individuals who signed those agreements. *See, e.g., Tenn. ex rel. Skrmetti v. Ideal Horizon Benefits, LLC*, No. 3:23-cv-00046, 2024 WL 4351650, *12 (E.D. Tenn. Sept. 30, 2024) (applying *Waffle House* to consumer finance protection claim brought by Tennessee and Kentucky Attorneys General on behalf of individuals who were parties to arbitration agreements).

Amazon cites no case, and Plaintiff has found none, in which a federal court stayed a government enforcement action because of arbitration agreements between a defendant and a group of private parties.

## III. The Complaint Plausibly Pleads Claims Under Federal and State Antitrust Law

**Defendants unlawfully maintain monopsony power.** Amazon possesses monopsony power: "the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). The Complaint alleges that Amazon can control the price it pays for DSP services. *See* Compl. ¶¶ 77-82, 115-30. Amazon suppresses the primary threat to that power: competition from unionized workforces at DSPs. *Id.* ¶ 11. Unionized DSP workforces would create competition, limiting Amazon's power to unilaterally dictate compensation and conditions for DSPs and their workers. *Id.* ¶¶83-100. Amazon also limits and prevents competition among DSPs for drivers, which would limit Amazon's power, increase wages, and improve conditions. *Id.* ¶ 101-14. This conduct does not constitute "growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell*, 384 U.S. 563, 570-71 (1966). Amazon's conduct therefore violates Section 2 of the Sherman Act.

Amazon's reliance on *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004), and *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) is inapt. Those cases address a monopolist's duty to deal with competitors. The Complaint challenges restrictions Amazon imposes on its DSP *suppliers*. Compl. ¶¶ 101-14, 119, 168. Your Honor properly rejected that defense in *United States v. Apple Inc.*, because the allegations concerned restrictions on developers and users, not a refusal to deal with rival smartphone makers. No. 24-cv-4055, 2025 WL 1829127, *12 (D.N.J. June 30, 2025). The restrictions pled here also do not involve competitors.

**The Complaint alleges concerted action between Amazon and its DSPs.** The Complaint alleges that, by an explicit contract and a "conscious commitment to a common scheme," *linkLine Commc'ns, Inc.*, 555 U.S. at 333, Amazon and its DSPs agree to limit and prevent competition for DSP drivers. Compl. ¶¶ 101-14. Amazon enters into agreements with DSPs that incorporate

policies from Amazon's Program Policies and Operations Manual. *Id.* ¶ ¶ 50-51. Those provisions are binding and not unilateral policies. The coordinated action goes beyond the formal contractual agreement. Specifically, Amazon worked with DSPs to stop or limit DSPs from soliciting one another's drivers. *Id.* ¶¶ 102-03, 105. Well after Amazon modified the explicit language, it continued to work with DSPs to prevent poaching and solicitation. *Id.* ¶¶ 106-14.

**The Complaint pleads legally viable markets.** Defendants' arguments concerning market definition, market power, and monopsony power fail because proper market definition "can be determined only after a factual inquiry into the commercial realities faced by" DSPs. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992). In a monopsony case, "[the] market is comprised of buyers who are seen by sellers as being reasonably good substitutes." *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 337 (3d Cir. 2018) (quotation marks omitted). The Complaint alleges why DSP owners have no reasonable alternatives to Amazon, because DSPs cannot sell their services to other buyers without rebuilding their businesses. Compl. ¶¶ 66-76, 122-24. The Complaint satisfies both common market definition tests: *Brown Shoe*, Compl. ¶¶ 115-28, and the hypothetical monopsonist test, *id*. ¶¶ 117-20. Amazon raises a factual dispute about the alternatives available to DSPs, not a legal issue.

Amazon does not dispute that, if DSP Services is a relevant market, Amazon has a 100 percent market share, Compl. ¶¶ 66, 115, 122, 129. That share establishes monopsony power. Further, the Complaint alleges direct evidence of Amazon's monopsony power: it imposes lower wages, worse working conditions, and onerous business terms. *Id.* ¶¶ 119-120. Contrary to Amazon's assertion, cognizable anticompetitive effects occur where a defendant has reduced output (here, DSP services) more than would have occurred but for its conduct, regardless of whether the amount of services it purchased decreased in absolute terms. *See, e.g., Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 788-91 (6th Cir. 2002).

The alternative last-mile services market applies to Counts II (attempted monopsonization) and III (illegal restraint of trade). For attempted monopsonization, "[n]o single factor is dispositive" and "market share is not an exclusive factor[.]" *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007) (citation omitted). The Third Circuit reversed dismissal of an attempted-monopolization claim based on detailed allegations of exclusionary practices and market conditions without pleading market share. *Id.* at 318-19. Amazon's market share is significant, it will soon be the largest buyer in this alternative market, and its anticompetitive acts and existing entry barriers establish a dangerous probability of success. Compl. ¶¶ 130, 163.

**DSPs and DSP drivers incurred antitrust injuries, for which Plaintiff may bring claims.** Where a state attorney general seeks equitable remedies in an antitrust enforcement action, she need not show antitrust standing. *See, e.g., Connecticut v. Sandoz, Inc.*, 820 F. Supp. 3d 125, 143-46 (D. Conn. 2026). In any event, Amazon's unlawful monopsony maintenance has caused monetary and nonmonetary injuries to DSPs and their drivers, harms of the type the antitrust laws were meant to prevent, and which flow from Amazon's unlawful conduct. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Compl. ¶¶ 77, 80-82, 101. The New Jersey Antitrust Act provides for direct and indirect damages. N.J.S.A. 56:9-12(c). The Attorney General can bring an action remedying an antitrust violation that has harmed a citizen of New Jersey. *See* 15 U.S.C. §§ 15c, 26; N.J.S.A. 56:9-12(b), (d); N.J.S.A. 56:9-10(a)-(b).

Respectfully submitted,

*/s/ Benjamin Notterman*

Benjamin Notterman (NJ Attorney ID 510572025)

Michael Kades (admitted pro hac vice)
Brian L. Moore (admitted pro hac vice)
Jeff Dan Herrera (admitted pro hac vice)
Erin Lyman (admitted pro hac vice)
**NACHAWATI LAW GROUP**
5489 Blair Road
Dallas, TX 75231
Telephone: (214) 890-0711
bnotterman@ntrial.com
mkades@ntrial.com
bmoore@ntrial.com
jherrera@ntrial.com
elyman@ntrial.com

*Attorneys for Plaintiff*